IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BOBBIE A. SCHEEL-BAGGS,

                                                            OPINION AND ORDER

                 Plaintiff,

                                                            07-cv-671-bbc

     v.

BANK OF AMERICA, d/b/a FIA CARD SERVICES, NA,
successor-in-interest to MBNA AMERICA, NA;
TRANS UNION, LLC[1],

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff Bobbie Scheel-Baggs's former husband seems to have subscribed to the philosophy that all is fair in love and war.  He left her with a $16,000 credit card debt that he had accumulated and then discharged in a bankruptcy proceeding after the divorce.  As a result, plaintiff was hounded by defendant FIA Card Services, NA and its agents for two years as they tried to collect the debt, even after an arbitrator had ruled it uncollectible from plaintiff.

     It appears that plaintiff's ex-husband's financial irresponsibility and defendant FIA's

---

[1] Plaintiff has settled with former defendants CSC Credit Services, Inc. and Mann Bracken, LLC, dkt. ##95 and 97.

1

attempts to collect the debt caused plaintiff no small amount of grief, but those issues are not the focus of this case.  Rather, the question is whether defendants FIA and Trans Union, LLC violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681u, by failing to take reasonable measures to determine that plaintiff was not liable for the debt, failures she contends were a factor in her inability to obtain credit and the cause of her physical and emotional distress.  Defendants' motions for summary judgment on those claims are now before the court.  (Plaintiff included other claims in her complaint as well, but she has abandoned them by failing to respond to defendants' motions for summary judgment with respect to those claims.  Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007).)

Defendants' motions for summary judgment will be granted in part and denied in part.  For much of the time that plaintiff was disputing the debt, she did not give defendants any reason to believe that her credit report contained any factual inaccuracies.  She said generally that she was not responsible for the debt or more specifically that the debt had been assigned to her ex-husband as a result of a divorce decree.  Neither of these reasons would lead defendants to believe that plaintiff had never applied to be included on the account, which is plaintiff's position now.  However, FIA continued to report that plaintiff was liable for the debt, even after an arbitrator held to the contrary in August 2007.  Around the same time, plaintiff informed defendant Trans Union that she had never been included

2

on the account and that it belonged solely to her ex-husband.  Trans Union failed to inform FIA of the nature of the dispute or take any other actions to verify the accuracy of the account.  These actions are sufficient to support a finding by a jury that defendants violated plaintiff's rights under the Fair Credit Reporting Act.

Also before the court is plaintiff's motion for leave to file a "supplemental opinion," which she filed several weeks after the parties completed briefing defendants' motions for summary judgment. The motion will be denied as unnecessary because the opinion plaintiff asks the court to consider is an unpublished district court case from another state that does not provide any useful analysis.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.


## UNDISPUTED FACTS

In March 1995, David Baggs opened a consumer credit account with MBNA America Bank, which is now defendant FIA Card Services, NA.  (For the remainder of the opinion, I will refer to both MBNA and FIA as "defendant FIA.")  The last four digits of the account were 9512.  Plaintiff Bobbie Scheel-Baggs married David Baggs in September 1996.

Defendant FIA's records reflect that in June 2000 it received a call from a person named Bobbie who identified herself as Baggs's wife and that upon her request it sent Baggs

3

a letter to add another person to the account.  (The parties dispute whether plaintiff made the phone call identified in FIA's records.) The letter included the following:

> You recently asked about adding someone to your account.  There are two ways to do this.
>
> To add a "joint Customer," you and the co-applicant should fill out the top part of the enclosed form.  Once your request is approved, the joint Customer will receive a card and both of you will be responsible for paying any balance due on the account. Each account can have only two joint Customers.
>
> To add an "authorized user," you should fill out the bottom part of the form.  The authorized user will receive a card, but will not be responsible for paying the account balance.
>
> When you have completed the appropriate section of the form, please mail it, or call to provide the information.  When a representative has spoken to you (and the co-applicant, if you are adding a joint Customer), you will have a prompt answer to your request.

Defendant FIA's records indicate that it "received an application requesting that plaintiff be added as a joint customer," but FIA does not have a copy of such an application. The records do not indicate whether plaintiff signed the application.  (Plaintiff denies that she completed or signed such an application.)  On July 21, 2000, defendant FIA added plaintiff to the account as a joint customer.  Defendant FIA's records also indicate that a woman identifying herself as plaintiff called FIA on several occasions on matters relating to the 9512 account in 2000, 2001 and 2002. (Plaintiff denies that she had any communication with FIA during that time period.)  Plaintiff never made a purchase on the 9512 account.

4

Plaintiff and Baggs divorced in June 2003.  In October 2005, Baggs filed for bankruptcy.  In January 2006, Baggs's $16,000 debt on the 9512 account was discharged.

In response to the discharged debt, defendant FIA created a second account with the last four digits 4249 "for purposes of freezing activity on the existing account number and forwarding that account to the recovery department."  Defendant FIA knew that both account numbers would appear on plaintiff's credit report, suggesting that she had two adverse accounts instead of just one.

Defendant FIA called plaintiff about the debt on October 28, 2005, December 20, 2005, December 28, 2005 and "numerous" times in January 2006.  During at least some of these phone calls, plaintiff disputed the debt, saying that it belonged to her ex-husband who had discharged it in his bankruptcy.  (Plaintiff does say specifically what she told FIA.)  When FIA called Baggs on October 28, 2005, he made similar statements.  During one of these phone calls, plaintiff "demanded" that FIA provide proof that she was an obligor on the account.

Defendant FIA hired Mann Bracken to collect on the 4249 account.  Between April 31, 2006 and August 26, 2006, Mann Bracken called plaintiff more than 90 times.

When plaintiff obtained her credit report from defendant Trans Union, it showed under "adverse accounts," a debt of $16,140 under the 4249 account and a debt of $15,568 under the 9512 account. The "pay status" of the 4249 account was listed as "charged off as

5

bad debt" and the status of the 9512 account was listed as "120 days past due."

On August 22, 2006, plaintiff filed an "online dispute" with defendant Trans Union regarding the 9512 and 4249 accounts. Under "Requested Investigation," plaintiff wrote, "investigate ownership: I am no longer liable for this account per divorce decree." Trans Union reported the dispute to FIA and summarized it as follows: "Not liable for Acct (i.e. Ex-Spouse business). If Liable, Provide Complete ID and ECOA Code." When FIA received notice of this dispute, it instructed Trans Union to delete the 9512 account because it was the same as the 4249 account. With respect to the 4249 account, defendant FIA verified that the account was listed in plaintiff's name and verified that the address, social security number and account history matched the personal identifying information contained in plaintiff's credit bureau dispute. However, FIA did not attempt to locate plaintiff's application even though it had a system called COBRA that sometimes stored such applications.

In a letter dated September 15, defendant Trans Union reported to plaintiff that as a result of its investigation, the 9512 account had been deleted but that the 4249 was "verified" as belonging to plaintiff and would remain unchanged. Trans Union verified the account despite a discrepancy between the address for plaintiff it had on file and the address provided by defendant FIA.

In September 2006, plaintiff called defendant FIA and said that she "never opened

6

the account," that she was "not responsible" for it, that she "was no longer [an] owne[r] of this business" and that there was "fraud."

In October 2006, plaintiff disputed the 4249 account with Trans Union over the telephone. (Neither party proposed facts regarding the substance of that conversation.) Trans Union summarized the dispute to FIA as "Not his/hers.  Provide complete ID."  FIA again confirmed to Trans Union that the personal information on the account matched the information provided by plaintiff during the dispute.

In November 2006, plaintiff again disputed defendant Trans Union's credit report. Under "consumer statement," she wrote, "Account(s) on my credit file are the responsibility of my ex-spouse per our divorce decree."  In a separate letter to Trans Union, she wrote that the 4249 account "needs to be deleted from my account immediately."  She provided the following explanation:

> I was divorced in 2003 from David J. Baggs, my former husband.  He was granted use of the MBNA Credit Card ending in 9512.  (See divorce papers attached.)
>
> He defaulted on the credit cards and filed for bankruptcy in Dec of 2005.  Attached is his bankruptcy notice and granted [sic]
>
> MBNA stated to me over the telephone that they DID close the 9512 account, however they DID BEGIN another account ending in 4249.  This account is "connected" to 9512.
>
> You have my permission to contact MBNA regarding the 4249 account to verify that it is in fact connected to the original 9512 account.  They refuse to speak about the 9512 account and state that the business is handled in another manner.  They do

admit that it is standard business to develop a new account number – this is wrong! They will also not provide proof of this account being mine either.

Both of the accounts are the responsibility of my former husband and not me. Thank you for your help in this matter!!!

Defendant Trans Union sent two letters to plaintiff in response.  (It did not forward the dispute to defendant FIA.)  In one letter, Trans Union stated: "Our records show that your creditor(s) previously verified as accurate the items that are listed below.  Therefore, under the Fair Credit Reporting Act, we consider this dispute frivolous and will not reinvestigate the item(s) unless you can provide court papers or a recent, authentic letter from the creditors that explains what information should be updated."  In the other letter, it stated: "The creditor is currently reporting the disputed information as a joint obligation. When co-signing for credit, you are equally responsible for the repayment of that obligation. Unless you and the creditor agree to remove your name from the account, we will report these debts and all subsequent credit information in the names shown on the contract or application. . . . A divorce decree does not override an original contract with a creditor."

In January 2007, defendant FIA hired a third party debt collector, Creditors Interchange, to collect the debt on the 9512 account.  Also in January, defendant FIA initiated an arbitration proceeding against plaintiff for payment on the 4249 account.

On April 25, 2007, defendant FIA began looking for an application signed by plaintiff.  It never found the application.

8

On August 14, 2007, defendant FIA lost its claim against plaintiff in arbitration. The claim was dismissed with prejudice.

On August 24, 2007, plaintiff sent a letter disputing the 4249 and 9512 accounts to defendant Trans Union and other credit reporting agencies.  With respect to the 4249 account, plaintiff wrote, "This NEVER was a real account. It is a FAKE account created by [defendant FIA] based on [the 9512 account] and is FALSELY being reported as a true and accurate account."  With respect to the 9512 account, she wrote, "This is the 'original' account to the FAKE account . . . created by [defendant FIA].  It IS NOT MINE.  It was an individual account only belonging to my ex-husband prior to our marriage and CHARGED OFF in his bankruptcy."

On August 31, 2007, defendant FIA received notice of the dispute regarding the 4249 account.  (Defendant Trans Union had already deleted the 9512 account.)  Trans Union summarized the dispute as follows: "Claims inaccurate information.  Provide or confirm complete ID and verify account information."  Defendant confirmed to Trans Union that the information was accurate. Trans Union repeated this information to plaintiff in a response dated September 14, 2007.

In August 2007, plaintiff began shopping for a new car.  The following requests for credit were denied:

| Creditor | Date of Credit Denial | Stated Reason for Denial | Source of Credit Report |
|---|---|---|---|
| Royal Credit Union | 8/22/07 | – Delinquent past or present credit obligations with others<br>- Value of type of collateral not sufficient | Trans Union |
| Bremer | 8/23/2007 | – Excessive obligations in relation to income<br>– Value or type of credit not sufficient | CSC Credit Services |
| Fifth Third Bank | 8/24/07 | – Delinquent credit obligations<br>– Excessive credit obligations<br>– Insufficient credit references<br>– Excessive credit inquiries<br>– Excessive use of revolving credit | Trans Union |
| Wells Fargo Auto Finance | 8/27/07 | Delinquent past or present credit obligations | Trans Union and Equifax |
| Bank of America | 8/28/07 | None provided | Trans Union |
| JP Morgan Chase Bank | 9/7/07 | None provided | Trans Union |
| GMAC | 9/10/07 | None provided | Trans Union |
| AmeriCredit | 9/10/07 | None provided | Trans Union |
| HSBC AutoFinance | 9/11/07 | – Percentage of  Delinquent Credits in Last 6 Months<br> – Delinquency on Recently Opened Accounts<br> – Insufficient Number of Accounts Rated Current" | Equifax |

| Citizens Autmobile Finance | 9/15/07 | – Collection item or chargeoff, judgment foreclosure or repossession<br>– Delinquent credit history<br>– High level of open end AND unsecured credit balances | Trans Union |
|---|---|---|---|
| Capital One | 10/7/07 | None provided | Trans Union Experian Equifax |

(Defendant FIA does not dispute that plaintiff was denied credit by these lenders, but defendant Trans Union objects to the admission of the letters denying plaintiff credit on the ground that they are hearsay.  However, I conclude that such letters are admissible under the business records exception, Fed. R. Evid. 803(6), or the residual exception, Fed. R. Evid. 807.  Trans Union does not suggest any reason why such letters would not be an accurate reflection of the creditor's actual decision.  Certainly, creditors have no incentive to send out letters falsely denying credit applications.)  Plaintiff ultimately obtained financing to lease a car for $449 a month through Nissan Motor Corporation on September 19, 2007.

As of September 14, 2007, plaintiff's credit report listed three adverse accounts unrelated to the 4249 account: (1) Alliance Collection Agencies was classified as a "Collection Account" and had a balance of $684; (2) Alltel Communications was classified as "Charged Off As Bad Debt" and had a balance of $418; and (3) Capital One Services was showing two late payments and had a balance of $0.  Plaintiff's income reported on her tax

11

returns was $11,826 in 2007 and $11,303 in 2006.

The 4249 account remained on defendant Trans Union's credit report for plaintiff until she filed this lawsuit in March 2008.

OPINION

A.   Defendant FIA Card Services

Plaintiff's sole claim against defendant FIA is that it violated 15 U.S.C. § 1681s-2(b), which requires furnishers of credit information to conduct an investigation when they receive notice of a dispute from a consumer reporting agency.  Although the language of the statute does not expressly require it, I have concluded in previous cases that the statute should be read as requiring a reasonable investigation.  McKeown v. Sears Roebuck & Co., 335 F. Supp. 2d 917, 936 (W.D. Wis. 2004); Kronstedt v. Equifax, No. 01-C-52-C, 2001 WL 34124783, *16 (W.D. Wis. Dec. 14, 2001).  See also Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (assuming without discussion that § 1681s-2 requires "reasonable" investigation).  No party challenges that conclusion in this case.

In her brief, plaintiff identifies two deficiencies in defendant FIA's investigation:  (1) FIA failed to confirm that plaintiff was liable for the account by reviewing the application that caused plaintiff to be added to the account; and (2) it failed to report the account as disputed to credit reporting agencies such as defendant Trans Union between August 2006

12

and March 2008.  With respect to the second asserted deficiency, plaintiff appears to be relying on § 1681s-2(b)(1)(D), which says, "if the investigation finds that the information is incomplete or inaccurate" the furnisher must "report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis."

This raises the question whether information about an account is "incomplete or inaccurate" if the information does not include an account holder's dispute.  Plaintiff cites Saunders v. Branch Banking and Trust Co. of VA, 526 F.3d 142, 148 (4th Cir. 2008), for the proposition that it is, but plaintiff's reliance on Saunders is misplaced.  In Saunders, the court held only that it was wrong to conclude that "reporting a debt without reporting its disputed nature can *never* be deemed inaccurate as a matter of law." Id. at 149 (emphasis in original).  The ultimate question is whether failing to report the dispute is "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." Id. at 150 (quoting Dalton v. Capital Associated Industries, 257 F.3d 409, 415 (4th Cir. 2001)). In determining whether an omission is misleading, a court must take into account §1681s-2(b)(1)(E), which is the only part of the statute that addresses the issue of disputes.  It states that when "an item of information is disputed by a consumer," the furnisher of information must modify, delete or block the disputed information if it "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation."  In other words, once a disputed

13

piece of information has been verified by an investigation, § 1681s-2(b) imposes no further obligation.  Thus, the question whether defendant FIA was required to report the dispute is subsumed within the question whether it conducted a reasonable investigation.

The sole deficiency in defendant FIA's investigation that plaintiff identifies is its failure to look for a copy of the application adding plaintiff to the account, but any argument regarding the reasonableness of defendant FIA's investigation before the arbitration ruling is foreclosed by Westra, 409 F.3d 825, a case that plaintiff fails to acknowledge.  In Westra, the court held that a furnisher discharged its duty as a matter of law under § 1681s-2(1)(b) by verifying the account holder's name, address and date of birth.  The court stated in dicta that "perhaps a more thorough investigation would have been warranted" if the furnisher had been told that the nature of the dispute concerned fraud, but no more was required because the furnisher was told only that "the account did not belong to" the plaintiff.  Id. at 827.  In this case, the facts show that defendant FIA received information from defendant Trans Union that was just as "scant" as that furnished in Westra.  Specifically, Trans Union summarized plaintiff's dispute as "Not liable for Acct (i.e. Ex-Spouse business)" or even more simply as "Not his/hers."  From this, FIA had no reason to conduct a more thorough investigation than it did.

Plaintiff points to her own phone calls with defendant FIA, but the facts plaintiff proposed regarding these calls do little to help her case.  As an initial matter, it is not clear

14

whether information provided by plaintiff could trigger any duty for FIA to act under § 1681s-2(b)(1).  That provision applies after a furnisher receives notice of a dispute "pursuant to 1681i(a)(2)," which is a provision involving notice provided by "consumer reporting agencies," not individual consumers.  In any event, plaintiff's conversations with FIA were no more specific than the notices from the credit reporting agencies.  The facts show only that she said her ex-husband was "responsible" for the account.  FIA's records show that plaintiff used the word "fraud" in one conversation in September 2006, but plaintiff proposed no facts showing the context.  I cannot conclude that using the word in isolation is enough to trigger a duty to find a signed application from plaintiff.

The landscape changed significantly on August 14, 2007, when the arbitrator denied defendant FIA's claim against plaintiff regarding the 4249 account and dismissed it with prejudice.  The facts do not show that FIA appealed that decision and FIA does not deny that the decision is binding.  Thus, a jury could find that FIA acted unreasonably in violation of § 1681s-2(b) when it informed credit reporting agencies in late August and September 2007 that plaintiff still owed the debt.  Crabill v. TransUnion, LLC, 259 F.3d 662, 664 (7th Cir. 2001) (reasonableness of investigation is generally question of fact for jury).  Although FIA argues in its brief that plaintiff has failed to show that FIA's lawyers informed the company of the arbitration decision before FIA confirmed the inaccurate information, this argument misses the point even if I assumed that FIA's lawyers could be separated from FIA.

15

The question is not whether FIA actually knew it was reporting inaccurate information but whether it should have known this by conducting a reasonable investigation.  Certainly, a jury could find that a company's failure to consult with its own lawyers is unreasonable for the purpose of § 1681s-2(b).

## B.  Defendant Trans Union

Two related provisions of the Fair Credit Reporting Act are at issue with respect to plaintiff's claim against defendant Trans Union: 15 U.S.C. § 1681e(b), which requires credit reporting agencies to follow "reasonable procedures" for insuring the accuracy of a credit report, and 15 U.S.C. § 1681i, which requires the agencies to conduct a "reasonable investigation" when a consumer disputes the accuracy of information in a credit report. Plaintiff contends that Trans Union violated these requirements by (1) failing to discover on its own that the 4249 and 9512 accounts were duplicates; (2) refusing to conduct a new investigation when the account had been verified less than 180 days earlier; and (3) not requiring defendant FIA to provide "actual proof of account liability" by asking to send it a copy of plaintiff's credit application.

With respect to the duplicate accounts, defendant Trans Union deleted the 9512 account as soon as defendant FIA told it to do so.  Plaintiff appears to believe that Trans Union should have realized on its own that the 4249 account was derived from the 9512

16

account, but the accounts had different numbers and different amounts.  Plaintiff  fails to explain how Trans Union should have known without any information from her or FIA that one of the accounts was a duplicate.  United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991) ("undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Next, plaintiff argues that defendant "Trans Unions' procedures are unreasonable because its computer system does not allow a consumer's dispute to be investigated if the information has been previously verified by the furnisher within the previous 180 days, even when the consumer has provided additional, new information regarding the dispute."  Plt.'s Br., dkt. #56, at 12.  Plaintiff did not propose any facts showing that Trans Union has such a policy and Trans Union denies that it does.  In any event, neither I nor a jury can evaluate Trans Union's procedures in a vacuum; all that matters for the purpose of § 1681e(b) and § 1681i are the procedures that Trans Union applied to plaintiff.  Massachusetts v. EPA, 127 S. Ct. 1438, 1453 (2007) (to demonstrate standing to sue, "the party bringing suit must show that the action injures him in a concrete and personal way").

The facts show only that Trans Union declined to investigate plaintiff's dispute in November 2006, but its failure to do so was reasonable.  The only reason plaintiff gave for disputing the debt in November 2006 was that the account was "the responsibility of [her] ex-spouse per our divorce decree," an objection that does not require any factual

17

investigation to rebut.  As Trans Union explained to plaintiff in its response to her dispute, plaintiff's divorce decree was irrelevant to the question whether her credit report was accurate.  The divorce decree governed plaintiff's rights with respect to her ex-husband; it could not change any obligations she had to a third party.  Plaintiff does not argue to the contrary and she fails to identify any information she provided to Trans Union in November 2006 that should have prompted it to dig further.

With respect to defendant Trans Union's third asserted deficiency, plaintiff cites several cases in which courts found investigations of credit reporting agencies to be inadequate or potentially so, but in none of the cases she cites did a court hold that an investigation is unreasonable every time the agency fails to demand to see a copy of the credit application.  Henson v. CSC Credit Services, 29 F.3d 280, 287 (7th Cir. 1994) (declining to dismiss complaint for failure to state claim when plaintiff alleged generally that defendant failed to conduct proper investigation under § 1681i); Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) (affirming district court's finding that defendant did not delete inaccurate information promptly as required by § 1681i(a) in part because agency relied solely on consumer dispute verification forms rather than contacting creditors themselves after fraud was confirmed); Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) (affirming jury's verdict that agency violated § 1681e(b) when it failed to inform furnisher of nature of consumer's complaints); Curtis v. Trans Union, LLC, Nos. 02 C 207

18

and 02 C 208, 2002 WL 31748838, *5 (N.D. Ill. Dec. 9, 2002) (concluding that it was for jury to determine whether agency violated § 1681i when it failed to conduct investigation after consumer told agency that debt had been eliminated by court judgment); <u>Richardson v. Fleet Bank of Massachusetts</u>, 190 F. Supp. 2d 81, 88 (D. Mass. 2001) (question of reasonableness under § 1681i was for jury when defendant had failed to investigate debt even after consumer showed copy of discharged mortgage).

The rule of law to be taken from these cases is that agencies have a duty to investigate the accuracy of the information provided by the creditor when the consumer gives the agency a specific reason for doing so.   <u>Henson</u>, 29 F.3d at 287 (credit reporting agency may have duty "to go beyond the original source" if "consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable"). In this case, the facts do not show that plaintiff gave Trans Union any reason to question the accuracy of any information FIA provided until August 2007.  Up until that time, plaintiff consistently objected to the report on the sole ground that the debt had been assigned to plaintiff's ex-husband in the divorce decree.  That is not a factual dispute, but a legal objection and a groundless one at that.

Again, everything changed in August 2007.  At that point, plaintiff told defendant Trans Union that the account "was an individual account <u>only</u> belonging to [her] ex-husband prior to our marriage and CHARGED OFF in his bankruptcy."  Despite receiving notice of

plaintiff's dispute that the debt was from an individual account of her ex-husband's, defendant Trans Union did not ask defendant FIA to show that plaintiff was a co-obligor on the account and did not tell FIA what plaintiff's dispute was.  Instead, Trans Union simply said that plaintiff "claim[ed] inaccurate information" and asked FIA to confirm her identification.  A reasonable jury could find that such a meager effort did not satisfy its obligations under § 1681i.

Defendant Trans Union relies heavily on <u>Deandrade v. Trans Union LLC</u>, 523 F.3d 61, 65 (1st Cir. 2008), for the proposition that it cannot be held liable because plaintiff's dispute with defendant FIA related to the validity of the debt, a legal question that could not have been answered by Trans Union through reasonable investigation.  That may have been true before the arbitrator's decision, but after the arbitrator dismissed FIA's claim against plaintiff, the legal question was resolved.  Thus, when plaintiff filed her dispute with Trans Union on August 24, 2007 (10 days after the arbitrator's decision), she no longer owed the debt and any credit report stating the contrary was *factually* inaccurate.  Had Trans Union conducted a more thorough investigation or at least informed FIA of all the facts, it might have discovered the error.

## C.  <u>Damages</u>

1.  <u>Actual damages</u>

Plaintiff seeks actual damages for credit denials she received and for emotional distress she suffered, both of which may be awarded under 15 U.S.C. § 1681o.  Kronstedt v. Equifax, No. 01-C-52-C, 2001 WL 34124783, *10 (W.D. Wis. Dec. 14, 2001) (citing Cousin v. Trans Union Corp., 246 F.3d 359, 369 n. 15 (5th Cir. 2001), and Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995)).  Defendants challenge plaintiff's right to seek both types of damages because she cannot show the required causal connection between any violation of the Act and any credit denial and because her evidence of emotional distress is legally insufficient.

In Anderson v. Trans Union, LLC, 345 F. Supp. 2d 963, 975 (W.D. Wis. 2004), I concluded that when the alleged injury is a denial of credit, the standard for causation is whether the defendant's violation of the Act was a "substantial factor" in the denial of credit. Accord Philbin v. Trans Union Corp., 101 F.3d 957, 968 (3d Cir. 1996).  No party has questioned that standard in this case and I see no reason to reevaluate it.

Defendants' primary argument is that plaintiff cannot show a causal connection because her credit reports included other adverse accounts, but I agree with plaintiff that that is a question for the jury.  The $16,000 debt from defendant FIA dwarfs the other three accounts, the largest of which was less than $700.  Because almost all of plaintiff's bad debt came from the inaccurate account, a reasonable jury could find it was a substantial factor in the denial of her credit applications.

21

        Defendant FIA argues in one paragraph that plaintiff could not have obtained a loan even with a clean credit report because her income was too low.  Although this argument has merit, I cannot rule on this question as a matter of law.  Of the 11 creditors who denied plaintiff's application for a loan, only one of them listed plaintiff's income as a reason for denying her application.  Each of the other creditors that disclosed its reasons said that it could not give her a loan because of her poor credit history.  That is sufficient to preserve the question for the jury.

        With respect to plaintiff's request for damages for emotional distress, defendants criticize plaintiff for relying on her own testimony, but that is an accepted method of proving emotional injury.  E.g.. Lust v. Sealy, Inc., 383 F.3d 580, 589 (7th Cir. 2004); United States v. Balistreri, 981 F.2d 916, 932 (7th Cir. 1992).  Defendants are correct that a plaintiff must do more than declare in conclusory fashion that she was "embarrassed and humiliated," Wantz v. Experian Information Solutions, 386 F.3d 829, 834 (7th Cir. 2004), but plaintiff's testimony is much more specific than that.  In her deposition, she describes the various symptoms that she was experiencing and explains why she felt humiliated by the inaccurate information.  Plt.'s Dep., dkt #46-3, at 135-42.  Her evidence is far from overwhelming, but I cannot conclude that it is inadequate as a matter of law.


2.  Punitive and statutory damages

22

A plaintiff may recover statutory damages up to $1,000 as well as punitive damages if she can show that a defendant willfully failed to comply with the Fair Credit Reporting Act. 15 U.S.C. § 1681n(a). The standard is the same as in other cases involving punitive damages: whether the defendant knowingly or recklessly violated plaintiff's rights, or, in other words, whether the defendant knew of an "unjustifiably high" risk that a violation would occur or should have known of such a risk because it was obvious. Safeco Insurance Co. of America v. Burr, 127 S. Ct. 2201, 2215 (2007).

Although a final decision must wait for trial, I conclude that plaintiff will be entitled to take her claim for punitive damages to the jury with respect to both defendants if she proves up the facts she has alleged. Defendant FIA continued to report the debt even after the arbitrator denied its claim. It is preposterous to argue as FIA does that plaintiff has not adduced any evidence that FIA knew about the arbitration decision. Dft. FIA's Reply Br., dkt. #75, at 5-6. FIA was a party to the action. Even if the company's lawyers did not notify everyone in the company of the decision, FIA provides no legal basis for distinguishing its lawyers' knowledge from that of the company. Section § 1681n(a) does not require a plaintiff to prove that a particular company official has knowledge of a violation.

Defendant Trans Union may not have had actual knowledge that the credit report was inaccurate, but a reasonable jury could find that it recklessly disregarded other rights that plaintiff had under the statute. When plaintiff notified Trans Union that the FIA

23

account was an individual account of her ex-husband's, it did not forward the nature of the dispute to FIA; Trans Union simply said that plaintiff was "claim[ing] inaccurate information."  A reasonable jury could find that Trans Union's response was a willfull violation of its obligation under § 1681i(a)(2)(A) to notify the creditor of "all relevant information regarding the dispute that the agency has received from the consumer or reseller."  Certainly, "all relevant information" includes the nature of the dispute.

ORDER

IT IS ORDERED that

1.  Defendant FIA Card Services, NA's motion for summary judgment, dkt. #49, is DENIED with respect to plaintiff Bobbie Scheel-Baggs's claim that FIA violated 15 U.S.C. § 1681s-2 by continuing to report that plaintiff was liable for the 4249 account after an arbitrator denied its claim.  The motion is GRANTED in all other respects.

2.  Defendant Trans Union, LLC's motion for summary judgment, dkt. #43, is DENIED with respect to plaintiff's claim that Trans Union violated 15 U.S.C. § 1681i by failing to adequately reinvestigate plaintiff's dispute after she informed Trans Union in August 2007 that the 4249 was her ex-husband's individual account.  The motion is GRANTED in all other respects.

3.  Plaintiff's motion for leave to file supplemental authority, dkt. #87, is DENIED

24

as unnecessary.

4. A change in the court's schedule requires holding the final pretrial conference on Thursday, October 2, 2008 at 4:00 pm.  Motions in limine, proposed special verdict forms, jury instructions and voir dire questions shall be filed and served by September 26, 2008. Jury selection will be held on Wednesday, October 22, 2008 at 9:00 a.m. and trial will begin the following day.

Entered this 15th day of September, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge